NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED

SEP - 9 2005

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-208-DLB

MICHAEL ANTHONY SMITH                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

ALBERTO GONZALES, ET AL.                                          DEFENDANTS

Michael Anthony Smith, an individual presently confined at the United States Prison-Big Sandy in Inez, Kentucky ("USP-Big Sandy"), has filed a *pro se* civil rights complaint which the Court construes as falling under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The plaintiff has also filed a motion to proceed *in forma pauperis* [Record No. 2], which the Court will address by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a

court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges his due process rights have been violated. To the extent that the plaintiff has named the United States of America and two individuals who are employees of the federal government, the plaintiff's claims fall under the Fifth Amendment of the United States Constitution. To the extent the plaintiff complains about the conditions of his confinement in administrative detention, he asserts claims under the Eighth Amendment of the United States Constitution.

## NAMED DEFENDANTS

The named defendants are: (1) Alberto Gonzales, the Attorney General of the United States of America; (2) Harley G. Lappin, Director of the Bureau of Prisons ("BOP"); and (3) the United States of America. The plaintiff sues Gonzales and Lappin in their official and their individual capacities.

## ALLEGATIONS OF THE COMPLAINT

The plaintiff alleges that his due process rights have been impaired, and/or that he is being subjected to cruel and unusual punishment as a result of several actions the defendants have taken. The Court has summarized the claims as set forth below.

### 1. Request for Transfer to Another Facility
### Remedy No. 360931

First, the plaintiff complains that USP-Big Sandy's failure and/or refusal to transfer him to another federal correctional institution violated his due process rights. The plaintiff alleges that on September 15, 2004, several inmates at USP-Big Sandy, whom the plaintiff identified as being

members of the "Gangster Discipline Nation" ("GDN"),[1] confronted him and threatened his physical safety. Plaintiff states that as a result of this threat, officials at USP-Big Sandy placed him in the Special Housing Unit ("SHU") under protective custody, against his wishes. The plaintiff alleges that a Lieutenant Thorn advised him that if he (plaintiff) agreed to submit to protective custody, it would increase his chances of being transferred to another federal prison.

The plaintiff states that his case manager, Sue Greene, submitted a request to have him transferred. He alleges that in November, 2004, Samuel Batts, the Designator at the BOP's Mid-Atlantic Regional Office, denied the transfer request. The plaintiff alleges that Batts denied the transfer request on the grounds that the plaintiff needed to have "a year of clear conduct." The plaintiff objects, stating that he has already accumulated three years of "clear conduct."

In relation to the claim that he was entitled to a transfer, the plaintiff appears to be arguing that if he cannot be transferred, he wants to be released back to the general population. He contends that as a result of his extended placement in the SHU (Administrative Detention) he is suffering adverse consequences, such as: (1) being denied the opportunity to enroll in certain educational and/or vocational classes offered at USP-Big Sandy, specifically classes teaching Microsoft, real estate, and OSHA procedures; (2) being denied employment opportunities at USP-Big Sandy; (3) being unable keep personal property in his possession; (4) experiencing depression and having to take anti-depressants; (5) being handcuffed when he leaves his cell; and (6) having his access to phone, recreation, institutional activities, and interaction with the Christian Community limited more than they would be if he were in the general population at USP-Big Sandy.

---

[1] The plaintiff states that he used to be a member of the GDN.

At all levels of appeal, the BOP's response was that the plaintiff was not appropriate for transfer.[2] The BOP advised the plaintiff that due to the GDN's threats against him, and due to the orderly running of USP-Big Sandy, it was unsafe for him to return to the general prison population. The BOP further advised the plaintiff that his prolonged detention in the SHU was pursuant to BOP Program Statement ("PS") 5270.07, *Inmate Discipline and Special Housing Units*, and PS 5100.07, *Security Designation and Custody Classification Manual*.[3]

### 2. Claim that GDN Members Were Not Punished
### Remedy No. 364495

The plaintiff complains in the second set of grievances that USP-Big Sandy staff failed to take any steps to punish the GDN members who threatened him and essentially caused his prolonged detention in administrative segregation. On January 31, 2005, Suzanne Hastings, who appears to have succeeded Dan L. Dove as the warden of USP-Big Sandy, responded to the plaintiff's BP-9 appeal. She did not directly answer the plaintiff's inquiry about punishing the GDN members, but stated instead that the plaintiff's presence in the general population would be detrimental to the orderly running of USP-Big Sandy, as well as to the plaintiff's personal safety.

On March 9, 2005, K. M. White, the Regional Director of the BOP's Mid-Atlantic Office, responded to the plaintiff's BP-10 appeal. White stated that Warden Hastings had provided an accurate and adequate response to the GDN gang member/discipline issue. White noted that an SIS

---

[2]

Robert F. Scott, Counselor at USP-Big Sandy, stated in an undated response to the plaintiff's BP-8 "Attempt at Informal Resolution" that the plaintiff would be "considered for a transfer after longer period of time with clear conduct."

[3] As for the plaintiff's complaints about restrictions to his privileges, Dan L. Dove, then Warden of USP-Big Sandy, responded on December 22, 2004, that the plaintiff still had access to the recreation yard, the law library, and educational materials. *See* Remedy No. 360931-F1, "Response to Administrative Remedy."

-4-

investigation revealed that although a specific group had posed a threat to the plaintiff's safety, specific individuals could not be identified.[4] White concluded as follows, "Accordingly, you were removed from general population and placed in protective custody, pending transfer."

On June 15, 2005, Harrell Watts, Administrator of the BOP's National Inmate Appeals, responded to the plaintiff's BP-11 appeal. He stated that the Warden and the BOP's Regional Director had adequately addressed the plaintiff's concerns.

### 3. Claim that BOP Ignored Hearing Procedures
#### Remedy No. 367046

The plaintiff pursued a third round of detailed grievances with the BOP, all of which he attached to his complaint. In these grievances, the plaintiff alleged that staff at USP-Big Sandy failed: (1) to provide him with a Detention Order; (2) failed to conduct periodic reviews and/or hearings in order to determine if his admininistrative detention in SHU was justified; and (3) failed to provide the him with requested forms. Specifically, the plaintiff alleged that prison staff should have conducted a seven-day hearing on September 23, 2004, a thirty-day hearing on October 15, 2004, and a sixty-day hearing on November 15, 2004.

Warden Hastings responded to the plaintiff's BP-9 on March 14, 2005. She stated that she did order an investigation into the plaintiff's inquiries. She states that the plaintiff was brought to the SHU Lieutenant's office on numerous occasions to review the plaintiff's status in SHU. She also responded that because the plaintiff had requested Protective Custody, the prison was only required to review the plaintiff's file on September 23, 2004, not conduct a hearing.

---

[4]

The plaintiff made a handwritten notation on the copy of White's response. In the notation, White disagreed with White's factual statement. The plaintiff stated that he and Gary Beatty, another inmate at USP-Big Sandy, could identify the specific GDN gang members. Plaintiff further noted that "staff members have told me the separations are in the computer."

Warden Hastings noted that when the plaintiff ceased being in "Protective Custody" status, he received a "Detention Order" which advised him of the change in his status and that he would remain in SHU based on CIMS concerns. She further informed the plaintiff that while he would not receive due process hearings "associated with a Protective Custody inmate," he would continue to be reviewed under regular Special Housing Review procedures. K. M. White of the Mid-Atlantic Regional Office concluded on April 19, 2005, that Warden Hastings had provided the plaintiff with an accurate and adequate response to his questions.

Plaintiff made handwritten notations on the copy of Warden Hastings' responses. The plaintiff alleges that to the extent Warden Hastings claims that his file reflects that he did receive timely segregation reviews as required by regulations, the BOP falsified his records. In sum, he disputes or takes issue with almost every response Hastings offered. The plaintiff alleged that the prison's failure to comply with PS 5270.07 and other BOP regulations have caused his administrative detention to be unnecessarily extended. He also alleges that the more limited conditions of his detention in the SHU constitute cruel and unusual punishment.

## RELIEF REQUESTED

The plaintiff seeks: (1) damages from each defendant in the amount of $500.00 per day for each day he has been in the SHU, and (2) $50,000.00 in punitive damages from each defendant.

## DISCUSSION

For several reasons stated herein, the complaint must be dismissed.

### 1. No Liberty Interest in Transfer

First, to the extent that the plaintiff either alleges that he has a liberty interest in being transferred to another prison, he is mistaken. Well-settled law establishes that prisoners have no

constitutional entitlement to invoke due process claims. *Moody v. Daggett*, 429 U.S. 78, 88 n.9

(1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976) (inmates

have neither protected liberty interests nor property interests in custodial classification). Rather, the

Attorney General of the United States has delegated those discretionary decisions to the Director of

the BOP, which has a classification procedure. 18 U.S.C. §4081; 28 C.F.R. §0.96. *See e.g., Peck*

*v. Hoff*, 660 F.2d 371 (8th Cir. 1981). Congress has given federal prison officials full discretion to

control the conditions of confinement.

Transfers and prison assignments are functions wholly within the discretion of the Bureau

of Prisons. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, 225

*reh'g denied*, 429 U.S. 873 (1976) (holding that "[n]either, in our view, does the Due Process Clause

in and of itself protect a duly convicted prisoner against transfer from one institution to another

within the state prison system," and noting that the fact "[t]hat life in one prison is much more

disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest

is implicated when a prisoner is transferred to the institution with the more severe rules").

In sum, federal inmates do not have a liberty interest in either remaining free from

discretionary transfers to less agreeable prisons or in seeking a transfer to a facility more desirable

to them. *Meachum*, 427 U.S. 215. *See also Montanye v. Haymes*, 427 U.S. 236 (1976); *Grayson*

*v. Rison*, 945 F.2d 1064 (9th Cir. 1991); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986); *Leibowitz*

*v. United States*, 729 F.Supp. 556 (E.D. MI 1989), *aff'd without opinion*, 914 F.2d 256 (6th Cir.

1990), *cert. denied*, 499 U.S. 963 (1991); *Olim v. Wakinekona, supra.*

### 2. SHU Confinement Does Not Violate Constitution

For reasons similar to the analysis related to prison transfers, the Court concludes that the

-7-

plaintiff's continued confinement in SHU, now approaching one year, implicates neither a Fifth nor an Eighth Amendment violation.

Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). A plaintiff must establish that he has a legally protected interest in being free from a certain security classification in order to claim that he was entitled to due process. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995).

In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt. The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). The Supreme Court determined in *Sandin* that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*. The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . ." *Id.* at 483-84. *Sandin* focuses not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate. *Id.* at 481.

The Sixth Circuit has applied the test enunciated in *Sandin* and has determined that even lengthy detentions in segregated and/or administrative detention do not violate the Due Process Clause. In *Merchant v. Hawk-Sawyer*, 37 Fed.Appx. 143 (6th Cir. (Ky.) May 7, 2002) (not selected for publication in the Federal Reporter) the Sixth Circuit determined that the prisoner's 16-month

-8-

stay in administrative detention did not violate Eighth Amendment; and that his 21-month

confinement in special housing unit did not violate Fourteenth Amendment (applicable to state

defendants; corollary to Fifth Amendment which applies to federal prisoners).[5]

The plaintiff has no liberty interest in being returned to the general prison population.

Placement in administrative segregation does not give rise to a protected liberty interest, because it

does not constitute an atypical and significant hardship on the inmate. *See Sandin*, 515 U.S. at 484;

*Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Bennett v. Smith*, 10 Fed.Appx. 633, 634 (6th Cir.

(Mich.) September 17, 2004) (Not selected for publication in the Federal Reporter).  Simply put, the

plaintiff has not alleged facts implicating either a Fifth or an Eighth Amendment violation.[6]

### 3.  Claims Against Gonzales and Lappin
### A.  Official Capacity Claims

To the extent that the plaintiff complains about USP-Big Sandy's alleged failure to follow

the procedures set forth in specific BOP administrative regulations, the plaintiff states no claim

against Defendants Gonzales and Lappin in their *official* capacities.

---

[5]

The court stated as follows: "Merchant's 21-month confinement in the special housing unit does not give rise to a protected Fourteenth Amendment liberty interest because it is not an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin*, 515 U.S. at 484." *Merchant v. Hawk-Sawyer*, 37 Fed.Appx. at 146.

[6]

*Sandin*'s analysis requires the Court to dismiss the plaintiff's Eighth Amendment claim (relating to the conditions of his detention in SHU), as well as his due process claim under the Fifth Amendment. *See Morris v. Cason*, 102 Fed.Appx. 902, 903, 2004 WL 1326066 (6th Cir. (Mich.) June 10, 2004) (Not selected for publication in the Federal Reporter), in which the Sixth Circuit affirmed  the district court's dismissal of several prisoners' Eighth Amendment claims involving, among other things,  detention in segregation.  Citing *Wilson v. Seiter*, 501 U.S. 294, 298, (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), the Sixth Circuit concluded that plaintiffs alleged nothing that rose to the level of an Eighth Amendment violation.  The court determined that their restraint "did not involve a protected liberty interest absent an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Morris v. Cason*, 102 Fed. Appx. 902, 903 (citing *Sandin v. Conner*, 515 U.S. 472, 484).

A *Bivens* constitutional claim is only properly asserted against federal employees in their individual capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *Sanchez-Mariani v. Ellingwood*, 691 F.2d 592 (1st Cir. 1982); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

When damages are sought against federal employees in their *official* capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 847-75 (9th Cir. 1975). When a federal employee is sued in his or her individual capacity, the action is not a suit against the United States. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Because the only proper defendant in a *Bivens* claim is a person acting under color of federal law in that person's *individual* capacity, the plaintiff has failed to state a claim upon which relief can be based against Gonzales and Lappin in their *official* capacities. The Court dismisses, with prejudice, the plaintiff's Fifth and Eighth Amendment constitutional claims against Defendants Gonzales and Lappin in their *official* capacities.

### A. Individual Capacity Claims

To the extent that the plaintiff alleges that Gonzales and Lappin are liable to him in their individual capacities under his construed *Bivens* claims, the plaintiff simply does not allege that either of these defendants had any personal involvement in the alleged deprivation of his constitutional rights. Gonzales is the Attorney General of the United States and the head of the Department of Justice and, as such, is the highest ranking law enforcement officer in the country.

Lappin is the Director of the BOP, which is a division of the Department of Justice. The plaintiff did not allege that either Gonzales or Lappin had any actual, personal involvement in the alleged unconstitutional actions about which he complains. A claim under *Bivens* requires a showing that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998). Liability under *Bivens* is personal and based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizudah*, 595 F.2d 948, 953 (4th Cir. 1979).

The plaintiff has not alleged that either Gonzales or Lappin violated his constitutional rights or were personally responsible for, or knowingly acquiesced in, any unconstitutional conduct. *See Rizzo v. Goode*, 423 U.S. at 373-77; *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983). The plaintiff may be asserting claims against Gonzales and Lappin under a *respondeat superior* theory, based upon their supervisory capacities. If so, the complaint still fails to state a claim against them. The doctrine of *respondeat superior* cannot provide the basis for liability under *Bivens*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95, (1978); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (per curiam); *Jones v. City of Memphis*, 586 F.2d 622, 624- 25 (6th Cir.1978).

Neither Gonzales' position as the Attorney General nor Lappin's position as Director of the BOP is sufficient to impose liability against them in their individual capacities. The plaintiff must allege and prove that Gonzales and Lappin personally condoned, encouraged, or knowingly acquiesced in the alleged unconstitutional misconduct. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995). *See Sanders v. United States*, 760 F.2d 869, 872 (8th Cir. 1985) (warden of federal

-11-

medical center could not be liable under doctrine of *respondeat superior* for alleged inadequate treatment of prisoner, absent a showing of his personal involvement in the alleged negligent acts). Accordingly, the plaintiff has no claim against these defendants in their individual capacities.

### 4. Claims Against the United States

The United States, as sovereign, is immune from suit except as it consents to be sued, and it may define the terms and conditions on which it may be sued. *Honda v. Clark*, 386 U.S. 484, 501 (1967); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Federal courts have no jurisdiction to consider actions for monetary damages brought against the United States unless there has been a waiver of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

"In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392 (1976); *see also Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. at 166. The United States has not waived its sovereign immunity to monetary damages for constitutional torts. The plaintiff's claims against the United States must be dismissed for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

For all of these reasons, the complaint must be dismissed with prejudice for failure to state a claim upon which relief can be granted. 28 U.S.C. §1915(A).

### CONCLUSION

For the reasons discussed above, it is **ORDERED** that this action is **DISMISSED**, with prejudice. Judgment shall be entered contemporaneously with this Memorandum Opinion in favor of the defendants.

This 9th day of September, 2005.



Signed By:
David L. Bunning
United States District Judge

-12-